IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NICOLE DENT, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-1713-M |
| | § | |
| DAVACO, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Davaco's Motion to Strike [Docket Entry #29] and Motion for Summary Judgment [Docket Entry #20]. For the reasons explained below, both Motions are **GRANTED**.

### BACKGROUND FACTS

Defendant Davaco assists retailers nationwide with the setup of new retail stores and the reorganization of existing ones. Davaco employees who perform such services are known as merchandisers.

Plaintiff Nicole Dent began her employment with Davaco as a merchandiser on or about September 19, 2004.[1] In 2006, Davaco changed Dent's job title from "merchandiser" to "merchandiser crew lead," which resulted in an increase in Dent's pay.[2] Despite the change in job title, Dent's general job duties remained the same: setting up fixtures, placing products, and affixing price tags to merchandise.[3] Certain of the fixtures and merchandise that must be lifted and carried are quite heavy; therefore, it is an essential function of the position that the merchandiser be capable of lifting up to fifty pounds on a regular basis. Furthermore, because

---

[1] Davaco's Motion, App. at 87, 93.
[2] *Id.* at 10, 89, 90.
[3] *Id.* at 9, 10.

assignments are located throughout the United States and Canada, merchandisers must be able to travel for extended periods of time.[4]

From January 2007 until her resignation, Dent worked exclusively for Sally Beauty Supply, a Davaco client.[5] Dent's husband, Sam Dent, also worked for Davaco. The Dents were considered a team, and worked together on all of their jobs for Sally Beauty Supply.[6]

The Dents reported to Richard Christman, who scheduled their assignments. Christman also supervised eight other teams, which all performed merchandising services for Sally Beauty Supply stores in 2007. Work assignments had dropped off in the last seven months of 2007 due to the recession, so there were not enough Sally Beauty Supply jobs for Christman to fully schedule all nine teams to work simultaneously during this time period.[7] Furthermore, the availability of assignments varied depending on the time of year; for example, Sally Beauty Supply does not require any merchandising services during the month of December.[8]

In June 2007, Dent learned that she was pregnant and telephoned Christman on June 20, 2007 to advise him of her pregnancy.[9] Dent continued to work on Sally Beauty Supply jobs until mid-September 2007.[10] On or about Friday, September 21, 2007, Dent found out that she needed to take a medically necessary test the following Monday, September 24, 2007.[11] Dent was already scheduled to start a Sally Beauty Supply job on that Monday. Dent called Christman to inform him of the conflict, and requested that Davaco fly her from her home in North Carolina to the job site in Maine on Tuesday so that she could work on that project. Davaco considered and refused Dent's request.

---

[4] *Id.* at 10, 16-18.
[5] *Id.* at 9.
[6] *Id*. at 9, 89.
[7] *Id.* at 10-11.
[8] *Id.* at 10, 13.
[9] *Id*. at 94.
[10] *Id*. at 11.
[11] *See* Complaint at 4.

On September 25, 2007, Davaco Human Resources received a copy of Dent's job description, on which her doctor made notes precluding her from lifting "up to 50 pounds on a regular basis," and from traveling "for extended periods" of time.[12]  In response, Davaco took Dent off of active work duty.

On or about October 3, 2007, Davaco received another note from Dent's doctor, stating that Dent could not lift over twenty-five pounds.[13]  Although Davaco assumed that this meant that the travel restriction was lifted, it did not return Dent to active work duty because she could not meet the requirement of being able to lift up to 50 pounds on a regular basis.[14]  On October 10, 2007, Dent complained to Davaco that the merchandiser job description reviewed by her physician was not applicable to her individually.   In response to Davaco's invitation to draft a description of the duties she personally had been engaging in as a merchandiser, Dent communicated that she did not lift heavy items because of a previous diagnosis of carpal tunnel syndrome.[15]  When Davaco contacted her to discuss this limitation, Dent stated that she could perform her job as a merchandiser without lifting over twenty-five pounds, because her husband, who worked with her on all Sally Beauty Supply jobs, had agreed to be responsible for any heavy lifting.[16]

The two obstacles to Dent's active work duty having been cleared, Davaco Human Resources notified Christman in early November that Dent was again eligible to be scheduled on Sally Beauty Supply jobs.  However, Christman did not schedule Dent for the first half of November because he had already scheduled other teams to work on the available Sally Beauty

---

[12] *Id.* at 52, 58.  It is unclear how and why Dent's job description was provided to Dent's doctor for review.
[13] *Id.* at 62.
[14] *Id.* at 53.
[15] *Id.* at 54.
[16] *Id.*

Supply jobs during that time.[17]  There was only one Sally Beauty Supply job available in the second half of November, and Christman assigned this job to Dent and her husband.[18]  There were no Sally Beauty Supply jobs available in December 2007.

On December 13, 2007, Dent's doctor prohibited her from traveling until after she delivered her baby.[19]  Being no longer able to perform her essential job duties, Dent requested short term disability leave on that date.[20]  Dent resigned her employment on March 17, 2008.[21]

## ANALYSIS

I.  Motion to Strike

Davaco moves to strike these portions of Dent's affidavit as inadmissible hearsay:

- "My doctor told me that it was still safe for me to travel and work, just not to lift more than 25 lbs."[22]

- "I told Ms. Rodriguez that the doctor just told me that it would be safe for me to travel."[23]

- "On September 28, 2007, I called my doctor's office and was told that the doctor did not take me out of work, just restricted my lifting to under 25 lbs."[24]

- "The doctor had a surprised look and said no.  He looked in my file and said he had put down that I was restricted to only lifting under 25 lbs and that was it."[25]

These statements are hearsay and do not fall within the exceptions articulated in Federal Rules of Evidence 803(3) and (4), as urged by Dent.  Davaco's Motion to Strike these four statements is therefore GRANTED.

---

[17] *Id.* at 10-13.
[18] *Id.* at 12-13.
[19] *Id.* at 54, 82, 109.
[20] *Id.* at 54-55, 84.
[21] *Id.* at 115, 116.
[22] Dent's Affidavit ¶ 14.
[23] *Id.* at ¶ 15.
[24] *Id.* at ¶ 16.
[25] *Id.* at ¶ 17.

II. Motion for Summary Judgment

 A. Summary Judgment Standard

Under Rule 56(c), summary judgment is warranted if the pleadings, discovery, disclosure materials, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[26] A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[27] The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[28] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.[29] In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."[30]

 B. Discrimination on the Basis of Pregnancy

Dent alleges that Davaco discriminated against her on the basis of her pregnancy in violation of Title VII of the Civil Rights Act of 1964.

Pregnancy discrimination claims brought under Title VII may be proved through direct evidence, statistical proof, or the burden-shifting framework laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[31] In order to establish a prima facie

---

[26] Fed. R. Civ. P. 56(c).
[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[28] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).
[29] *See* Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 250; *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[30] *Lynch Props.*, 140 F.3d at 625 (citation omitted).
[31] *See Urbano v. Cont'l Airlines*, 138 F.3d 204, 206 (5th Cir. 1998); *Coney v. Dallas Housing Authority*, 2003 WL 292167 at *2-3 (N.D. Tex. Feb. 7, 2003) (Lindsay, J.).

case of pregnancy discrimination through the *McDonnell Douglas* analysis, the plaintiff must demonstrate that: (1) she was a member of a protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) others similarly situated were more favorably treated.[32] If this prima facie showing is made, the burden of evidentiary production shifts to the defendant to articulate one or more legitimate, non-discriminatory reasons for the alleged adverse employment actions.[33] Once the defendant does so, the burden shifts back to the plaintiff to show, by a preponderance of the evidence, that the defendant's articulated reason is pretextual.[34]

Davaco challenges the third and fourth elements of Dent's prima facie case.

1. An Adverse Employment Action

Dent alleges that she was constructively discharged by Davaco because Davaco demoted her and denied her work. Dent also alleges that the demotion and denial of work were adverse employment actions in and of themselves.

a. *Demotion*

Dent's sole allegation in support of her complaint that she was demoted is that she stopped receiving her work schedule directly from Christman, and that she had to get scheduling information from her co-workers.[35] The fact that Dent did not receive some of her work schedules directly from Christman is not a "demotion" that would constitute an adverse employment action. Her rate of pay did not decrease, and her job duties and job title remained the same.[36] Rather than presenting objective evidence of a demotion, Dent appears to rely on her

---

[32] *Urbano*, 138 F.3d at 206.
[33] *Id*.
[34] *Id.*
[35] *See* Complaint at 3, 4.
[36] *See Holmes v. Drug Enforcement Admin.*, 512 F. Supp. 2d 826, 840 (W.D. Tex. 2007) ("[Fifth] Circuit precedent establishes that in cases where the evidence produces no objective showing of a loss in compensation, duties or

subjective perception that she had been demoted. However, this perception is without evidentiary support in the record, and is insufficient to establish that she was in fact demoted.[37] Dent fails to make a prima facie case of pregnancy discrimination based on an alleged demotion.

### b. Denial of Work

The Supreme Court has held that for purposes of a Title VII retaliation claim, an adverse employment action is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of [retaliation]."[38] Dent complains that she was not given Sally Beauty Supply work for two months during her pregnancy, from mid-September to mid-November, and that she was denied special approval for a plane ticket from North Carolina to a Sally Beauty Supply job site in Maine.

Regardless of whether these actions constituted adverse employment actions, Davaco has articulated legitimate, non-discriminatory reasons for taking Dent off the active work list and for denying her request for a plane ticket. Evidence in the record shows that Dent's doctor stated that she could not perform two essential components of her job: extensive traveling, and lifting heavy weights. Davaco temporarily suspended Dent's work assignments on the basis of this medical information. When the travel restriction was lifted and Dent explained that she would not need to lift heavy weights to perform her job, Davaco informed Christman that Dent was again eligible for work, and Christman assigned Dent to work on the only Sally Beauty Supply job that was available in the second half of November.

---

benefits . . . that evidence is insufficient to establish an adverse employment action." (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (internal quotation marks omitted)).

[37] *See, e.g., Doherty v. Ctr. for Assisted Reproduction, P.A.*, 108 F. Supp. 2d 672, 680 (N.D. Tex. 2000) (Kendall, J.) (granting summary judgment to defendant on plaintiff's pregnancy discrimination claim where plaintiff's demotion claim was only supported by her own conclusory and speculative statements that "she felt" defendant "demoted" her through its actions).

[38] *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (citation and internal quotation marks omitted).

As for the plane ticket, the evidence of Davaco's travel policy shows that a reservation for air travel made less than seven days in advance may require special approval.[39] Dent requested a flight with only four days' notice. Christman made the request, but did not receive approval.[40] Furthermore, merchandisers must be present for the first day of each Sally Beauty Supply job, and even if approval had been given, Dent would have missed the first day of the job.[41]

Dent does not proffer any evidence to show that Davaco's legitimate, non-discriminatory explanation for taking Dent off the active work list and for denying her request for a plane ticket is a pretext for discrimination. Therefore, as a matter of law, Dent's contention that she was denied work cannot be the basis of a pregnancy discrimination claim under Title VII.

      *c. Constructive Discharge*

Finally, Dent contends that Davaco constructively discharged her from employment. To substantiate a claim for constructive discharge, Dent must demonstrate that Davaco deliberately made her working conditions so intolerable that a reasonable person would have felt compelled to resign under the circumstances.[42] Although this is a case and fact specific inquiry, the Fifth Circuit has identified the following factors that, singly or in combination, are relevant in determining whether an employee would feel forced to resign: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the

---

[39] Davaco's Motion, App. at 23.
[40] *Id.* at 12.
[41] *Id.*; Complaint at 4.
[42] *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005); *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001); *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997).

employee's former status]."[43]

Dent makes several allegations in her Complaint to support her constructive discharge claim. First, Dent alleges that Christman made three discriminatory comments to her after he learned of her pregnancy: (1) On June 20, 2007, Christman purportedly informed Dent that she was "done," that his own wife was pregnant and constantly going to doctors' appointments, and that Davaco could not give her time off for doctors' appointments; (2) on June 28, 2007, Christman allegedly asked Dent if she was "still pregnant;" and (3) on July 16, 2007, he purportedly informed Dent that he was not scheduling her anymore, that he could not give her time off for doctors' appointments, and that the Sally Beauty Supply project was coming to an end.[44]  Christman denies making such statements.[45]

Viewing the facts in the light most favorable to the nonmovant, the Court finds that these remarks were made, but concludes that they do not create the kind of intolerable working conditions that would compel a reasonable person to contemplate immediate resignation.[46] Christman continued to schedule Dent to work for several months after she informed him of her pregnancy, and scheduled her to work on the only job available to all nine teams in the second half of November, after she had been cleared to receive work assignments.

To the extent that Dent's alleged "demotion," her loss of two months' work, and the denial of the plane ticket are urged as part of her constructive discharge claim, those events, even considered in conjunction with the remarks attributed to Christman, still do not rise to the level of "intolerable working conditions" necessary to state a claim for constructive discharge.

---

[43] *Keelan*, 407 F.3d at 342 (quoting *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649-50 (5th Cir. 2004) (alterations in original).
[44] *See* Complaint at 2-3; Response, App. at 16.
[45] *See* Davaco's Motion, App. at 11.
[46] *See, e.g., Heasley v. Echostar Satellite, LLC*, 2009 WL 1457733, at *7 (W.D. Pa. May 22, 2009) (holding that while pregnancy related comments such as "How many tries did it take you" were inappropriate and possibly insulting, such "occasional comments . . . even if inappropriate, unjustified and embarrassing, are not adverse employment actions" (citation and internal quotation marks omitted)).

Finally, in her Response, Dent states her belief that Davaco would mistreat her in the future if she became pregnant again. However, fear of future conduct is not sufficient to support a claim of constructive discharge; "a plaintiff must demonstrate that existing conditions were such that a reasonable person would contemplate immediate departure."[47]

   2. Disparate Treatment

Dent's prima facie case also fails on the fourth *McDonnell Douglas* element, because she does not allege anywhere in her Complaint that other similarly situated merchandisers were treated more favorably than her.[48] Nor does she designate any specific facts beyond the pleadings to show that any other co-workers in similar circumstances—that is, under medical restrictions that temporarily prevented the fulfillment of certain essential work duties—were treated more favorably.

Therefore, because there is no genuine issue of material fact as to Dent's sole claim for discrimination in violation of Title VII, Davaco's Motion for Summary Judgment is GRANTED.

## CONCLUSION

For the reasons stated above, Davaco's Motion to Strike and Motion for Summary Judgment are both GRANTED.

**SO ORDERED.**

December 29, 2009.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[47] *Dawkins v. United Airlines, Inc.*, 1993 WL 339051 at *8 (N.D. Ill. Aug. 30, 1993) (citing *Brooms v. Regal Tube Co.*, 881 F.2d 412, 423 (7th Cir. 1989)).
[48] *Urbano*, 138 F.3d at 206.